AMERICAN ARBITRATION ASSOCIATION

EMPLOYMENT TRIBUNAL

| | | |
|---|---|---|
| JOHN ARNDT, | ) | |
| JEREMY MCMICHEN, AND | ) | |
| STEPHEN PEACOCK, | ) | |
| Individually and on behalf of others | ) | |
| Similarly situated, | ) | |
| Claimants, | ) | Case No. 30-160-00625-11 |
| vs. | ) | |
| | ) | |
| DIRECTV, INC. | ) | |
| Respondent. | ) | |

<u>ORDER GRANTING CLAIMANTS' REQUEST FOR COLLECTIVE ARBITRATION</u>

I, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered between the above named parties, being duly sworn, having duly heard the parties the proofs, allegations, and submissions, do hereby Award as follows:

On May 16, 2012, a telephonic hearing was held before the undersigned arbitrator, at which time it was agreed that the parties would present issues relating to the interpretation of the Arbitration Agreement on written submissions. The parties extensively briefed the issues, as framed by the Respondent relating to "clause construction" and by Claimant as to its request to proceed on their FLSA claims as a collective arbitration. Oral arguments were heard by the undersigned at a July 20, 2012 hearing. Appearing for the Claimants were George A. Hanson Esq. and Andrew W. Funk Esq., Stueve, Siegel, Hanson LLP. Appearing for the Respondent were Amy Manning, Esq. and Halima Horton, Esq., McGuire Woods LLP.

. This action was initially brought as a class action arbitration pursuant to the AAA's Supplementary Rules of Class Arbitration, <u>or</u> in the alternative as an "opt in" collective action under 29 U.S.C. § 216(b) for violations of the FLSA under the AAA's Employment Rules. Claimants allege that Respondent, DirecTV, failed to record or pay wages, or deducted wages for time actually worked, and that its compensation policies deprived them of overtime pay in violation of the FLSA.[1] Claimants seek damages equal to mandated overtime premium pay

---

[1] The FLSA sets forth requirements for minimum wage, overtime pay and record keeping for employees. 29 U.S.C. §§ 206(a) (1), 207(a) (1), 213 (a). Section 216(b)(1) of the Act provides that "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of *their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages, ... "*



within the three years preceding the filing of the demand, liquidated damages, pre- and post-judgment interest, reasonable attorney fees and costs. The American Arbitration Association ("AAA" or the "Association") declined to process the Rule 23 class action claims and this matter is now pending arbitration before it as a collective arbitration.

Respondent, Direct TV is a Delaware corporation, engaged in transactions affecting interstate commerce. Respondent is a provider of satellite television services and provides for the installation and maintenance of its system.  Claimants, John Arndt, Jeremy McMichen, and Stephen Peacock, are former employees of DirecTV who performed satellite installations and repairs, based out of DirecTV's warehouse in Cartersville, Georgia.

### Procedural Background

Respondent, DirecTV, is a party to a civil action in the United States District Court in Missouri, *Arnold et al v. DirecTV, et al* (E.D. Mo., No. 4:10-CV 352-JAR), filed on March 2010. Plaintiffs brought the action under § 216(b) of the FLSA for unpaid minimum wages and overtime pay, on behalf of themselves and similarly situated technicians employed by Defendants from March 2, 2007 to the present, and plead Rule 23 class action violations of the Missouri Minimum Wage Law, Mo. Rev. Stat §§ 290-500-530.[2] On November 9, 2011, while the Arnold Plaintiff's Motion for Conditional Certification was pending before the Missouri District Court,[3] Claimants filed the instant Demand with the American Arbitration Association (the "Association"), seeking recovery for alleged violations of the FLSA. Thereafter, Respondent unsuccessfully attempted to stay the arbitration proceedings before the AAA, and in the federal civil actions in *Arnold et al v. DirectTV*, No 4:10-CV-352-JAR (E.D. Mo.), and *DirecTV, LLC v. Arndt, et al*, Case No. 1:12-CV-00827-JOF (N.D. GA).

First, in *Arnold*, DirecTV sought to enjoin AAA from proceeding on the *Arndt* claims, until the Court ruled on the Plaintiff's pending motion for Conditional Collective Action

---

Section 216(b) (1) creates a private right of action for enforcement and provides that *"[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer....in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."*

[2] The issues alleged in Arnold are similar to those alleged in Arndt, but the parties are different and the scope of the class of is broader. Respondent alleges that the Claimants herein are members of the class in *Arnold.* The factual basis for that allegation was not developed in the matter before me and I reach no determination on that issue.

[3] The *Arnold* Plaintiffs filed motion for conditional collective action certification on July 22, 2011, seeking to certify a nation-wide FLSA collective class consisting of current or former installation service technicians, employed by DirecTV, Direct TV Home Services, Direct TV Home Service provider, or its subcontractors for any period after July 22, 2008, who worked more than 40 hours a week and were paid on a piece rate basis.

Certification and the Joint employer Issues.[4] The District Court declined to stay the arbitration. Subsequently, in *Arndt*, Respondent filed a civil action in U.S. District Court (N.D. GA) for a declaration that, under the Federal Arbitration Act, *9 U.S.C. §§ 1 et seq* ("FAA"), and the United States Supreme Court decision in *Stolt-Neilsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct.1758 (2010), DirecTV may not be subjected to multi-Claimant, class, or collective arbitration proceedings to which it did not consent. Respondent alleged that the Arbitration Agreements between the parties allowed only bilateral arbitration, and that Claimants must pursue their claims against DirecTV separately as individual arbitrations. *DirecTV, LLC v. Arndt, et al.*, Civil Action No. 1:12-cv-00827-JOF. On May 3, 3012, the District Court denied the stay.

DirecTV has requested that the arbitrator render an arbitration clause construction award under AAA's Supplementary Rules for Class Arbitrations, on the threshold question of whether, under the terms of the Arbitration Agreements between the parties, (the "Agreements") Respondent consented to arbitrate on a class, collective, multiparty, or consolidated basis. Respondent contends that Claimants may only pursue their FLSA claims as separate individual arbitration actions. It seeks dismissal of the collective and/or class claims. Claimants request that the arbitrator render a determination that, under the terms of their Agreements, they may collectively arbitrate their FLSA claims. Based on my review of the Agreements, the relevant law, the Demand and Statement of Claims, the responsive pleadings and briefs of the parties,[5] other relevant Court documents, and the parties' submissions, I find that the parties agreed to arbitrate the Section 216(b) FLSA claims alleged herein as a collective action. My determination herein addresses only the question of whether, under the terms of the Agreement, the parties either expressly or implicitly, agreed to arbitration of collective claims under the FLSA.

<u>Issue</u>

The pivotal issue is whether, under the terms of the Arbitration Agreements, Claimants may maintain this action for alleged violations of the FLSA as a collective arbitration. Claimant contends that the Agreement permits collective arbitration.

---

[4] The joint employer Issue is not an issue in this action as Respondent subsequently stipulated that DirecTV, LLC is the party Respondent.

[5] The record includes, but is not limited to, the following documents: (1) Claimants' letter dated on May 10, 2012, Claimants' Brief in Support of Request for Collective Arbitration under the FLSA, Claimants' Reply in Support of Request for Collective Arbitration, Claimant's Response to DirecTV's Motion for Stay of Arbitration (E.D. MO), and Claimants' Response to Motion for Emergency Stay (N.D. MO.); DirecTV's Answers, Amended Answers, and Objections to Claimants' Statement of Claims, DirecTV's Declaratory Judgment complaint and Emergency Motion for a Stay (filed in N.D. GA), DirecTV's Motion for Stay (E.D. Mo.), Respondent's letters dated May 4 and July 23, 2012; and Order Denying the Motion for Emergency Stay (N.D. GA), and Order Denying the Motion to Stay Arbitration (E.D. MO.)

### AAA's Rules for Class Arbitrations.

Following the Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), the Association adopted its class action rules which became effective in 2003. The Rules apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the AAA, where a party submits a dispute to arbitration on behalf of a purported class, and supplement any other applicable AAA Rules. The AAA's class action rules provide that class action arbitrations shall proceed in three stages. At the initial stage, Rule 3 provides:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that is has sought judicial review, the arbitrator may stay further proceedings or so part of them, until the arbitrator is informed of the ruling of the court.

Whether the Agreement precludes arbitration of collective claims, or what kind of proceeding the parties agreed to is the first inquiry that must be determined by the arbitrator before the arbitration may proceed as a collective action.

### The Applicable Law

The Federal Arbitration Act, (9 U.S.C. 1 et seq.) (the "FAA"), applies to this proceeding. The express purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms. Section 2 makes agreements to arbitrate "valid, irrevocable, and enforceable, "reflects a "liberal federal policy of favoring arbitration," and the "fundamental principle that arbitration is a matter of contract. (citations omitted) Thus, courts have placed arbitration agreements on an equal footing with other contracts, *Buckeye Check Cashing Inc., v Cardegna*, 546 U.S. 440, 443 (2006), and enforce them according to their terms. *See generally, AT & T Mobility LLC v. Concepcion et ux* (S.Ct. 2011); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ*,. 489 U.S.468, 478, (1989); *Stolt-Neilsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010). Public policy considerations may not be relied

4

upon to override the FAA's mandate that arbitration is a matter of contract between the parties. AT &T Mobility v. Concepcion, 131 S. Ct. 1740, 1745 (2011).

Arbitration is a matter of "consent and not coercion." When construing an arbitration clause, the arbitrator must give effect to the contractual rights and expectations of the parties. *Volt*, 489 U.S. 468, 479. As with any other contract, the parties' intentions control, inasmuch as the arbitrator derives her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.

Under the FAA, 9 U.S.C. § 1 et seq., the express terms of an agreement to arbitrate are to be adhered to and will determine the scope of the dispute that the parties contracted to arbitrate. *See Stolt-Nielsen*, 130 S. Ct. at 1773-76. The Court in *Stolt-Nielsen S. A., et al, v. AnimalFeeds International, Corp.* 130 S. Ct. 1758, 176 L. Ed. 605 (2010) held that, when the arbitration agreement is "silent" (and the parties have agreed by stipulation that they have not reached an agreement on the issue on class arbitration), "a party may not be compelled under the FAA to submit to class arbitration, unless there is a contractual basis for concluding they agreed to do so. However, it did not decide what contractual basis may support a finding that the parties agreed to authorize class arbitration.

The Court recognized that under certain circumstances, class arbitration can be authorized even in the absence of express authorization. It indicated that, under certain circumstances, it may be "appropriate to presume that the parties who enter an agreement implicitly authorized the arbitrator to adopt procedures necessary to give effect to the parties' agreement", stating the "when parties to a ... contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." 130 S. Ct. at 1775 (quoting Restatement (Second) of Contracts §204 (1979) But an implicit agreement to authorize class action arbitration is not a term the arbitrator may infer solely from the fact of an agreement to arbitrate. *Stolt*, 130 S. Ct. 1776. Significantly the Supreme Court did not mandate express consent to class arbitration, or state that it would never be reasonable to supply a contract term permitting class arbitration, or consider the propriety of supplying such term in the context of small value claims arising under a specific federal or state statute. The instant case can be distinguished from *Stolt* factually. First, the parties in this action have not stipulated that they have not reached an agreement on arbitration. The Arbitration Agreement is simply silent on the issue. Secondly, this action is not a class action arbitration, and does not give rise to the class action concerns the Court considered in rendering its ruling. Therefore, in my deliberations in this matter I find *Stolt* instructive, but not controlling.

My duty is to examine the terms of the Agreement, and to determine if there exists a contractual basis for concluding that they agreed to or did not agree to arbitrate FLSA collective actions. At the outset, I note that the Supreme Court cases relied upon by the

Respondent do not support its position that, unless an arbitration agreement "expressly" states that collective arbitration is authorized, the parties did not consent to such arbitration. It is undisputed that the Agreements are "silent" on the issue of collective arbitration. However, mere silence on the issue does not end the inquiry. A lack of explicit expression of intent regarding collective arbitration does not automatically bar collective arbitration, since the parties may have implicitly agreed to allow collective arbitration. In the absence of express language which manifests the intent of the parties, my inquiry turns to the terms of the agreement and the relevant Georgia law on the interpretation of contracts.

### Terms of the Agreements

The Agreements were drafted by Respondent and were required to be executed by all employees hired after January 1, 1993. Claimants were not given an opportunity to negotiate the terms of the Agreements, nor were they given an opportunity to refuse to sign and remain employed.

The language of the Agreements is uniform, comprehensive, and broadly stated as to the disputed claims to be submitted to arbitration. Specifically, the Agreements provide that all covered claims shall be submitted to binding arbitration for final resolution. Agreement, §2 It further states that:

> By entering this agreement, employee does not waive his/her right to file an administrative claim or complaint with the appropriate administrative agency, but does waive his/her right to file a civil action and a jury trial, because the Agreement provides for an adequate and equal opportunity for the vindication of claims and complaints through the arbitration process.

Agreement, § 5.

Disputes required to be submitted to binding arbitration include "all claims or controversies, past, present, or future ... arising out of the employee's employment or its termination, that the Company may have against the employee are the employee may have against the ... Company." Agreement, § 2. Claims covered by the Agreements include but are not limited to "claims for wages or other compensation due... claims for violation of any federal, state or other governmental law, statute, regulation ...." except for workers' compensation and unemployment compensation claims, and claims for equitable relief. Arbitration Procedure, §§ 3 and 4.

### Conclusions and Rationale

At the outset, I find the Association's determination to limit this matter to arbitration of collective claims was appropriate in light of the nature of the private right of action created by Congress under the FLSA. FLSA actions to recover wages and overtime pay may only be brought under the "opt in" procedures created by the statute. Congress specifically limited the

6

scope of FLSA suits to prevent Rule 23 representative actions and to avoid vast allegations of liability from being brought on behalf of employees who had no real involvement of knowledge of the lawsuit. *See, 93 Cong. Rec 2182* (Remarks of Senator Donnell). FLSA claims may not proceed as class actions under Rule 23, Federal Rule of Civil Procedure. A plaintiff may, however, bring a Rule 23 class action under analogous state law provisions. Class and collective actions are similar in that they may both be brought by an individual on behalf of himself/herself and other employees or former employees similarly situated. However, there are significant differences. When the Court certifies a Rule 23 class, class members are bound by the outcome, unless they affirmatively "opt out." In contrast, a person is not a party to a 216(b) action, unless he/she "opts in" by filing a written consent with the Court. [6]

The arbitrator has also been asked to determine that Respondent is entitled to a Partial Clause Construction Award under the Associations class action rules. The Demand and Statement of Claim alleged claims on behalf of a employees similarly situated, and were initially plead in the alternative as a class action. However, Claimants claims have procedurally been limited to collective arbitration by the Association. Claimants have not contested that determination, and have argued solely that they have a right to arbitrate their claims under the Agreement on a collective basis. I am not bound by how the parties characterize their positions, when the parties' agreement, the circumstances of the case, applicable procedural rules and law, and the claims pending arbitration, dictate a contrary determination. Technically, under the facts of this case, the parties are requesting that I interpret the terms of the Agreement they have entered. My review of the Agreement and the entire record leads me to conclude that the claims pending arbitration before me are insufficient to invoke the special procedures for administering class action claims set forth in the Supplementary Rules for Class Arbitrations. Thus, an award under the class action rules is neither necessary nor required under the AAA's Employment rules to address the issues herein.

---

[6] Class certification procedures are also different. Under the FLSA, a two-phase inquiry is used to determine whether to certify a collective action. At the initial conditional certification stage, the standard is not as strict as the one applied during Rule 23 class certification proceedings, and frequently results in conditional certification of the collective action (with notice to potential plaintiffs of the opportunity to "opt-in"). At a second stage, following more detailed discovery, a stricter standard is applied to determine whether the plaintiff(s) and the other collective action members are sufficiently similar to certify the collective action. Also, the statute of limitations may be tolled, pending the court's determination under Rule 23 class certification. In contrast, under the FLSA, the statute of limitations as to an individual claimant continues to run until that claimant has consented to opt-in. As a result, the statute of limitations may have already run as to many putative members of the collective action before they receive notice that a lawsuit has been filed.

Claimants do not allege Rule 23 class claims for state law wage violations. Claimants have not pursued a motion for a Rule 23 class

action. Claimants have requested an interim ruling that they may pursue their FLSA claims in a collective action in this arbitration pursuant to §216(b) of the FLSA. In their briefs and oral arguments, Claimants concede that they are proceeding under AAA Employment's Rules on a collective arbitration basis, and not as a Rule 23 class action. In its July 9, 2012 brief and post hearing submission,[7]

With respect to the Agreements' interpretation, Respondent begins with the proposition that The Federal Arbitration Act requires courts and arbitrators to enforce arbitration Agreements according to their terms, with the primary goal being to effectuate the intent of the parties. It relies on *Stolt-Neilsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010); *AT &T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011, and argues that unless an agreement expressly provides for class arbitration or collective arbitration, Claimants may only proceed on an individual basis, and not as a class or collective action. They contend that the U.S. Supreme Court in *Stolt-Neilsen* requires that a party affirmatively consent to class arbitration, and that collective or consolidated arbitration may not be imposed upon a party where the arbitration agreement is silent. Where the Agreement is silent, Respondent maintains that the arbitrator must find that the parties have not consented to resolve their disputes on a class, collective, or consolidated basis, citing *Fitzhugh v. Am. Income Life Ins. Co.* No. 1:11 cv 533, at 11 (N.D. Ohio Nov.3 2011) (collective arbitration); *Protective Life Ins. Corp v. Lincoln Nat'l Life Ins. Corp.*, 873 F 2d 281, 282 (11th Cir, 1989) (consolidated arbitration).

Claimants contend that *Stolt* did not alter the laws of contract interpretation or the FAA's requirement that an arbitration agreement be interpreted according to the parties' intent as manifested by the terms of the contract. First, the Claimants' argue that that the language of the Agreements is not ambiguous and that the intent of the parties can be discerned from its terms. Claimants assert that the Agreements broadly describe the claims subject to arbitration, and require that claims for wages and other compensation for violations of federal law be arbitrated. The Agreements contemplate arbitration of Claimants' claims for wages due under the FLSA, as it specifically requires that disputes for wages arising under federal statute be submitted to binding arbitration. Thus, since the Agreements guarantee to employees the same substantive rights in arbitration that they would have had in a civil action in Court, in exchange for their waiver of their right to file civil action and to jury trial, Claimants contend that the Agreements guarantee the right to collective action granted by the FLSA. In the alternative, Claimants contend that if the arbitrator finds the terms of the Agreements to be ambiguous, the she must apply the rules of construction in O.C.G.A. §13-2-2, and examine

---

[7] Under the facts before me, I make no determination whether Claimants may arbitrate Rule 23 class action claims under the terms of the Agreements.

the language of the Agreement in light of the surrounding circumstances, to determine the intent of the parties.

The Agreements are broad, encompassing "all claims or controversies, past, present or future, arising out of an employee's employment or its termination." Claims required to be submitted to binding arbitration include "claims for wages or other compensation due" and "claims for violations of any federal, state, or other governmental law, statute, regulation or ordinance." Thus, the Agreements incorporate FLSA wage claims by reference to federal laws and expressly require that those claims be submitted to binding arbitration. The FLSA allows Claimants to bring actions "on behalf of themselves and other employees similarly situated." The Agreements also contemplate that Claimants would have the same rights in arbitration as they would have in a civil action and jury trial to enforce those rights. It is well established that parties are free to structure their arbitration agreements as they deem fit. At the time these Agreements were executed, there was a long standing history of collective action enforcement under the FLSA. Had Respondent intended to exclude collective arbitration, they could have done so.[8] Under the terms of the Agreements, Claimants expressly waived their right to civil action a jury trial in exchange for "an adequate and equal opportunity for vindication of the claims and complaints through the arbitration process." I find that implicit in that guarantee was the right to collective arbitration on FLSA claims. Claimants' correctly argue that under the facts of this case, to interpret the contract to deny them the right to arbitrate collectively would deny them the benefit of their bargain, and contravene the language of the Agreements. I agree.

Claimants further points out that, when Congress enacted 216(b) collective action provisions of the FLSA, it recognized that, because each employee's damages may be small, employees may lack financial incentive or resources to bring individual suits. *See Hoffman-LA Roche, In. v. Sperling*, 493- U.S. 165, 170 (1989), *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) Claimants' assert that the right to pursue collective action in such cases is a substantive right. *Claimant's Reply Brief*, p. 7. This argument dove-tails with Respondent's Answers and Amended Answers to the Statements of Claim. See, Respondent's affirmative defense in which it asserts that these claims are barred by the doctrine of *de minimis non curat lex*.

By the plain language of the Agreements, I find the Agreements explicitly authorizes Claimants' to assert their rights on a collective basis, under the mechanisms created by the FLSA for the enforcement of violations of the Act, and that the Agreement expressly guarantees them a right equal to that which they would have had had they not waived their right to civil action and jury trial – that right includes the right to maintain their claims in

---

[8] Section 216(b) "opt in" language of the Portal to Portal Act was added to the FLSA in 1947, Pt. IV,§6, 61 Stat. 84, 87, 88 (1947)

collective arbitration. Absent an express exception to prohibit collective action, I find the language of the Agreements broad enough to include collective arbitration of FLSA claims.

Under the terms of the Agreement, the parties have delegated to the arbitrator the authority to resolve any dispute relating to interpretation, applicability enforceability or formation of the Arbitration Agreement. Inherent in that delegation is the authority to resolve disputes pertaining to which mechanism may be used in arbitrating claims submitted under the Agreement, where alternative procedures are provided by the statute under which the claims are asserted. Allowing multiple claims and claims by and against multiple parties to be arbitrated together in a collective action authorized by federal statute neither changes Claimants' separate entitlements to relief nor abridges defendants' right; it simply alters how the claims are processed. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.* 130 S. Ct. 1431, 176 L. Ed. 311 (2010).[9]

Next, Respondent argues that the principles of contract interpretation are irrelevant since the arbitration agreement is silent with respect to class, collective or consolidated arbitration. As such, there can be no ambiguity that would allow going outside the contract. Its arguments are made in reliance on cases involving class action arbitrations and do not take into consideration the substantive rights conferred by the FLSA which permit Claimants to combine their claims in one action where their claims would otherwise be too small to provide incentive to bring a single action. This is precisely one of the rights Claimants waived in exchange for an promise that they would be allowed to arbitrate those claims on the same basis they could have if they had not waive their right to suit and jury trial.

Assuming however arguendo that the language of the Agreements is ambiguous, Claimants' argue that Georgia law for interpreting contracts would apply. I agree. Under Georgia Law, any ambiguity in the contract must be resolved against the drafter. *O.C.G. § 13-2-2(5). (citations omitted) See* Claimant's Reply Brief p. 8. I conclude that, when the language of the Agreements is analyzed under applicable state law governing contract interpretation, O.C.G.A. §13-2-2, the parties agreed to collectively arbitrate Claimants' FLSA claims. The Agreements require that the arbitrator apply the substantive law of the state in which the claims arise. Georgia law applies as Claimants claim arise in Georgia. Georgia law is consistent with the FAA rules for contract construction, and requires that contracts be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language. Applying these principles, to the terms of the Agreement as discussed above, I find that to

---

[9] The changes in the shift from bilateral to class arbitration discussed by the Supreme Court in *Stolt* would not necessarily be applicable in this case, since Claimants are not pursuing Rule 23 class allegations. No employee would be required to be a party to the collective action who does not "opt in." Nonetheless, Respondent's concerns, pertaining to the scope, venue, manageability, and cost of collective arbitration are not issues to be determined in this threshold ruling. These are issues to be addressed by the arbitrator at a later stage, assuming Claimant's seek conditional certification.

effectuate the intent of the parties, it is reasonable to infer that the Agreements implicitly authorize collective action, and that the Claimants are not limited under the terms of the Agreements to the arbitration of their FLSA claims in bilateral proceedings.

DirecTV cites several provisions in the Agreements as evidence it consented only to bilateral arbitration. For example, it points to the Agreements language that it's the Agreements were intended to create an "impartial, informal, cost effective and speedy mechanism" for dispute resolution. These arguments are not sufficiently compelling to override Claimant's statutory rights guaranteed by the Agreement.  Respondent cites *Concepion*, contending that class action arbitration undermines the purpose of the arbitration procedure. But *Concepcion* addresses concerns pertaining to the ineffectiveness of class action arbitration and not to collective arbitration, which is substantially different process. DirecTV also maintains that the Agreements' discovery limitation allowing each party the right to depose one individual and one expert witness evidences that the parties agreed to bilateral arbitration.  However, the Agreements do not limit one employee to one deposition. The Agreement specifically provides that additional discovery may be made by mutual agreement or to the Arbitrator. The ultimate determination of what additional discovery is needed to adequately arbitrate the claim(s) under the Agreements terms is left to the arbitrator, taking into account the parties mutual desire to have a fact cost effective dispute resolution mechanism.

Respondent also raises concerns about the impact  of class action arbitration venue and costs in the arbitration process. Those issues involve differences between Rule 23 class action and collective actions. For the reasons discussed *supra*, at pp. 6-7 supra, as to why Rule 23 class action rules are inapplicable to Claimants. Moreover, Claimant correctly notes that Respondent may not rely on the concerns raised in *Stolt* regarding class action arbitrations. Neither Rule 23 nor the AAA's supplementary rules are applicable to FLSA collective actions. The "opt-in" in provisions of the FLSA prevent many of problems discussed in Stolt.

In conclusion, I find that the Agreements expressly and implicitly provide for collective arbitration of FLSA claims and by terms of the Agreements the parties consented to the collective arbitration.

SO ORDERED

August 23, 2012
Date

Mollie W. Neal

11

I, Mollie W. Neal, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Clause Construction Award of the Arbitrator.

August 23, 2012

Date

Mollie W. Neal

12