# AMERICAN ARBITRATION ASSOCIATION
## Atlanta Regional Office

| | |
|---|---|
| JOHN ARNDT,<br>JEREMY MCMICHEN, AND<br>STEPHEN PEACOCK,<br>individually and on behalf of others<br>similarly situated,<br><br>          Claimants,<br><br>vs.<br><br>DIRECTV, INC.<br><br>          Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CASE NO. 30-160-00625-11<br>)<br>)<br>)<br>)<br>) |

## CLAIMAINTS' BRIEF IN SUPPORT OF REQUEST FOR COLLECTIVE ARBITRATION UNDER THE FAIR LABOR STANDARDS ACT

### I. Introduction

DirecTV drafted and imposed arbitration agreements on John Arndt, Jeremy McMichen, and Stephen Peacock (collectively, the "Technicians") as a condition of their employment. It now asserts that the absence of language in those agreements explicitly authorizing them to exercise their right under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") to assert their legal rights collectively prevents them from doing so. DirecTV argues that a recent case finding that a maritime arbitration provision prohibited a Rule 23-type class arbitration applies here to preclude any collective arbitration that is not specifically authorized in writing in an arbitration agreement. But that case does not mandate such a radical departure from long-settled canons of contract interpretation. It simply stands for the proposition that contracts must be interpreted to determine the parties' agreement, and that a Tribunal must examine the parties' arbitration agreement to determine if it allows collective arbitration.



EXHIBIT
5
tabbies®

Here, the parties have agreed to arbitrate the Technicians' FLSA claims. Essential to that agreement was DirecTV's promise that the Technicians' opportunity to vindicate their rights in arbitration would be "equal" to the opportunity they would have been provided in court. In court, the Technicians would have been allowed to pursue their FLSA claims collectively. By the plain language of the parties' arbitration agreement, they should be allowed an equal opportunity to do so in arbitration.

## II.    The Arbitration Agreements Here Require Arbitration of FLSA Claims.

DirecTV employed John Arndt, Jeremy McMichen, and Stephen Peacock (collectively, the "Technicians") as satellite installation and repair technicians. DirecTV did not pay the Technicians for all hours worked; rather, it paid them only for certain tasks DirecTV designated as compensable. Notwithstanding this, DirecTV required the Technicians to spend multiple hours every week performing tasks that were deemed non-compensable and instructed the Technicians not to record time spent on non-compensable tasks. As a result, the Technicians routinely worked more than forty hours per week, but were not properly paid all wages due.

As a condition of their employment, DirecTV demanded that each technician sign a standard-form arbitration agreement (hereinafter "Agreement"). Copies of those Agreements are attached as Exhibit 1. The Agreement is broad, encompassing "all claims or controversies, past, present or future, arising out of an employee's employment or its termination" that either party brings against the other. *See* Agreement, Exhibit 1, at p. 1. Specifically, the Agreement covers "claims for wages or other compensation due" and "claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance." *Id.* at p. 2. The Technicians concede that this broad language includes their FLSA claims. The Agreement expressly contemplates that the Technicians would have the same rights in arbitration as they would have had in court:

> By entering into this Agreement, Employee does not waive his/her right to file an administrative claim or complaint with the appropriate administrative agency, but does waive his/her right to file a civil action and a jury trial, because the Agreement provides for an adequate and equal opportunity for the vindication of claims and complaints through this arbitration process."

*See* Agreement, Exhibit 1, at p. 1. In other words, in exchange for giving up their Constitutional right to a jury trial, the Technicians were guaranteed that they would have an equal opportunity

On November 9, 2011, the Technicians filed an arbitration demand with the American Arbitration Association, ("AAA") alleging that DirecTV's piece-rate compensation policies deprived them of overtime pay in violation of the FLSA. The Technicians filed their demand on behalf of themselves and other W-2 employees of DirecTV who have arbitration agreements. While the Technicians originally sought to invoke the AAA's Supplementary Rules for Class Actions, the AAA has notified the parties of an administrative policy dictating that FLSA claims be handled exclusively under the AAA's Employment Rules. DirecTV nevertheless argues that because the Agreement does not mention collective arbitration, DirecTV has not agreed to it, and it is therefore prohibited. But prohibiting the Technicians from arbitrating collectively would ignore the plain language of the Agreement and frustrate the parties' intent to provide the Technicians an "adequate and equal opportunity" to vindicate their claims.

**III.   *Stolt-Nielsen* Involved a Straightforward Reading of the FAA and Was Limited in Its Reach Given a Dispositive Stipulation Between the Parties.**

In *Stolt-Nielsen v. Animal Feeds International Corp.*, 130 S.Ct. 1758 (2010), the Supreme Court was asked to construe a maritime agreement between Stolt-Nielsen, an international shipping company, and its customer, AnimalFeeds, who filed a class action alleging that Stolt-Nielsen was engaged in an illegal price-fixing conspiracy. *Id.* at 1764. The case was consolidated

3

with other similar cases by the Multidistrict Litigation Panel. *Id.* Based on orders arising out of the MDL, Stolt-Nielsen and AnimalFeeds agreed they were contractually bound to arbitrate their dispute, but Stolt-Nielsen argued that the arbitration could not be conducted on a class-basis because the parties' arbitration agreement made no mention of class arbitration, and there was no underlying statute or custom of conducting class actions in maritime law. *Id.* The arbitration panel concluded that the agreement as written allowed for class arbitration. The district court vacated the award, but the Second Circuit reversed. *Id.* at 1766-67.

The Supreme Court granted certiorari to decide the question of whether the arbitration panel had exceeded its powers in allowing class arbitration, primarily by deciding if "imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the [FAA]." *Id.* at1764. But the word "silent" as used by the Court does not equate to the absence of any explicit mention of class arbitration in the agreement. There, counsel for AnimalFeeds had stipulated that the parties had reached no agreement as to whether or not class arbitration would be allowed, thus "the parties agreed their agreement was 'silent' in the sense that they had not reached any agreement on the issue of class arbitration." *Id.* at 1768. In other words, "silence" as used by the Supreme Court stood for the complete absence of any agreement on the class arbitration issue, whether express or implied.

The absence of agreement on class arbitration was central to the Court's decision, as the Court emphasized that when interpreting an arbitration agreement, an arbitrator must first determine the parties' intent as embodied in the arbitration agreement. The Court emphasized a well-recognized premise of contract interpretation: "While the interpretation of an arbitration

agreement is generally a matter of state law...the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Id.* at 1775. Accordingly, the Court concluded that "it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."[1] *Id.*

Thus, the Court instructed that the arbitration panel's first task should have been to determine whether or not the parties agreed to class arbitration. But in that case, where the parties had stipulated that they had neither intent nor agreement on the subject of class arbitration, there was no intent to interpret, and so "the arbitrators' proper task was to identify the rule of law that governs in that situation." *Id.* at 1768. The Court instructed that the panel should have taken governing law into consideration when interpreting the parties' agreement, specifically whether or not the law contained any default rules allowing for class arbitration. *Id.* at 1768-69. The Court hypothesized that the FAA, federal maritime or New York law would have provided the governing rule for AnimalFeed's claims, and noted that the overwhelming

---

[1] The Court was particularly concerned about preventing a party from being coerced into class arbitration because it found class arbitration to be fundamentally different from bilateral arbitration. *See Stolt–Nielsen,* 130 S.Ct. at 1776. But the concerns raised by the Court about class arbitration are not present in this case, where the arbitrator is interpreting whether or not the parties agreed to *collectively* arbitrate. An FLSA collective action is unlike a class action under Rule 23 of the Federal Rules of Civil Procedure because similarly-situated employees must always "opt-in" to a FLSA action. *See* 29 U.S.C. § 216(b). *See Mork v. Loram Maint. of Way, Inc.,* CIV. 11-2069 MJD/FLN, 2012 WL 38628 (D. Minn. Jan. 9, 2012) (upholding arbitrator's decision to allow collective arbitration of FLSA claims in part because of the differences between class and collective actions); *JetBlue Airways Corp. v. Stephenson,* 931 N.Y.S.2d 284, 289 (N.Y. App. Div. 2011) ("Class arbitration and the collective proceeding that the pilots have demanded here are so fundamentally different that *Stolt–Nielsen* does not dictate the result.")

evidence was that there was no default rule or even tradition of allowing anything but bilateral arbitration in the specific type of maritime contract at issue. *Id.* at 1769 n 6.

The Court found that the panel had failed to consider any governing rules and had instead exceeded its powers by imposing its own view of sound policy regarding class arbitration: "Rather than inquiring whether the FAA, or maritime law, or New York law contains a 'default rule' under which an arbitration clause is construed as allowing class arbitration in the absence of express consent, the panel proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation." *Id.* at 1768-69. Thus, the Court held that the arbitration panel had exceeded its power by basing its decision to allow class arbitration on "a public policy argument" rather than the parties' intent or governing law.

Because the parties had stipulated that there was no agreement between them regarding class arbitration, the Court did not comment on what constitutes an agreement to arbitrate: "We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration. Here, as noted, the parties stipulated that there was 'no agreement' on the issue of class-action arbitration." *Id.* at 1776 n.10. The Court therefore did not (and could not) impose a requirement that agreements to class arbitration must be explicit. But the Court made clear that under certain circumstances, class arbitration can be authorized even in the absence of express authorization in an arbitration agreement: "In certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement." *Id.* at 1775.

6

The Court cautioned that "[a]n implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer *solely* from the fact of the parties' agreement to arbitrate." *Id.* at 1775. Instead, in the absence of an explicit agreement, the parties' intent is determined by the language of the agreement as informed by any "default rules" supplied by the underlying law. As described more fully below, in this case the Tribunal may find either an explicit or an implicit agreement to authorize collective arbitration because the parties agreed to arbitrate wage claims under the FLSA, and the FLSA explicitly authorizes collective actions.

## IV.   The Parties' "Agreement" to Collectively Arbitrate Can be Found Even in the Absence of Explicit Authorization in an Arbitration Clause.

In correspondence with the AAA and in its now-dismissed complaint against the Technicians in the Northern District of Georgia, DirecTV has stated that because its Agreements are "silent" on the issue of collective arbitration, the Technicians cannot collectively arbitrate in light of *Stolt-Nielsen*. DirecTV argues that the arbitrator cannot find that DirecTV agreed to collective arbitration when the Agreement does not mention collective arbitration. In doing so, DirecTV has taken the position that *Stolt-Nielsen* establishes a bright-line rule that an arbitrator may only find that a party has consented to collective arbitration if the arbitration agreement specifically and explicitly authorizes collective arbitration. But this argument ignores that the agreement in *Stolt-Nielsen* was "silent" because the parties stipulated that they had not agreed to class arbitration, not because the agreement simply made no reference to class arbitration. Thus, subsequent decisions interpreting *Stolt-Nielsen* have held that the Court did not establish a bright-line rule that a party must expressly or affirmatively authorize class arbitration in an arbitration agreement.

7

For instance, in *Jock v. Sterling Jewelers, Inc.*, a group of retail sales employees filed a class action arbitration complaint with the AAA against their employer alleging gender discrimination. 646 F.3d 113, 117 (2d Cir. 2011) cert. denied, 132 S. Ct. 1742 (U.S. 2012). The arbitration agreement had no explicit expression of the parties' intent with respect to class claims. *Id.* The arbitrator noted that the issue of the parties' intent was "problematic in the context of a contract of adhesion" and held that under Ohio law, "[b]ecause this contract was drafted by Sterling and was not the product of negotiation, it was incumbent on Sterling to ensure that all material terms, especially those adverse to the employee, were clearly expressed." *Id.* at 117. The lower court vacated the arbitrator's decision in light of *Stolt-Nielsen. Id.*

The Second Circuit reversed the lower court, holding that the arbitrator had a "colorable justification" under Ohio law to find that the agreement between the parties manifested an intent to allow class arbitration. *Id.* at 124. The district court erred by "re-examining the record" and making its own determination of the parties' intent; under the proper standard of review, the district court should not have "substituted its legal reasoning for the arbitrator's," but should only have determined whether the arbitrator acted within her authority. Thus, the Court held that the arbitrator's decision should have been confirmed. *Id.* at 124-25.

The Second Circuit found that the district court's decision was based on a faulty interpretation of *Stolt-Nielsen* (the same interpretation DirecTV has repeatedly advanced) that a lack of explicit expression of intent regarding class arbitration in an arbitration agreement is tantamount to a prohibition on class arbitration. "*Stolt–Nielsen* …did not create a bright-line rule requiring that arbitration agreements can only be construed to permit class arbitration where they contain express provisions permitting class arbitration." *Id.* at 124 (*citing Stolt-Nielsen,* 130 S.Ct. at 1776 n. 10). The Court stated that a lack of explicit agreement "is not the same thing as

8

stipulating that the parties had reached no agreement on the issue. Nor is it the same as stipulating that the agreement is 'silent' on the issue of class arbitration in the sense that 'silent' was used by the *Stolt–Nielsen* majority." *Id.* Accordingly, the Second Circuit interpreted *Stolt-Nielsen* as allowing an implicit agreement to authorize class arbitration. *Id.* at 121.

The Second Circuit is not alone in this interpretation of *Stolt-Nielsen*; other courts have found that arbitration agreements without language discussing class arbitration: 1) are not "silent" in the meaning of *Stolt- Nielsen;* and 2) do not automatically bar class or collective arbitration because the parties still may have implicitly agreed to allow collective arbitration.[2]

**V.     The Parties' Agreement Authorizes Collective Arbitration.**

*Stolt-Nielsen* did not fundamentally alter the rules of contract interpretation or the FAA's requirement that an arbitration agreement is interpreted according to the parties' intent as manifested in the language of the agreement. *Stolt-Nielsen,* 130 S. Ct. at 1758 ("[W]e have said

---

[2] *See, e.g. Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 222 (3d Cir. 2012), as amended (Apr. 4, 2012) ("No stipulation between Oxford and Sutter is conclusive of the parties' intent and, indeed, the parties dispute whether or not they intended to authorize class arbitration. Therefore, the arbitrator in this case was not constrained to conclude that the parties did not intend to authorize class arbitration or, on the other hand, to identify a contrary default rule of New Jersey law."); *Amerix Corp. v. Jones*, CIV. JFM-11-2844, 2012 WL 141150 (D. Md. Jan. 17, 2012)(" While the Arbitration Clause does not refer explicitly to collective claims, the Court concludes that it does authorize such claims to proceed before an arbitrator"); *Mork v. Loram Maint. of Way, Inc.*, CIV. 11-2069 MJD/FLN, 2012 WL 38628 (D. Minn. Jan. 9, 2012) ("In the opinion, there is no indication that the Court meant that "silence" on the issue of class arbitration would necessarily result in a finding that class arbitration is prohibited, but rather that "mere silence" alone does not necessarily indicate consent to resolve disputes by class proceedings. [*Stolt-Nielsen*] at 1776. Thus, while the arbitrator may not infer implicit authorization for class-action arbitration solely from the existence of an agreement to arbitrate, *id.,* neither the *Stolt–Nielsen* Court nor subsequent interpretations of the decision require explicit reference to class arbitration in order to allow it."); *Smith & Wollensky Rest. Group, Inc. v. Passow*, 831 F. Supp. 2d 390 (D. Mass. 2011) (*citing Stolt-Nielsen*); *Opalinski v. Robert Half Int'l, Inc.*, CIV. 10-2069 FSH PS, 2011 WL 4729009 at *3 (D.N.J. Oct. 6, 2011); *YahooA Inc. v. Iversen*, 11-CV-03282-LHK, 2011 WL 4802840 at *3 (N.D. Cal. Oct. 11, 2011); *Westcott v. ServiceMaster Global Holdings, Inc.*, C 09-05150 SI, 2011 WL 2565621 at *4 n.1 (N.D. Cal. June 29, 2011).

on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.') (citations omitted). When determining parties' intent, the tribunal "should apply ordinary state-law principles that govern the formation of contracts." *Id. (citing First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)).

Under Georgia law, there are three steps in the process of contract interpretation. First, the tribunal must decide whether the contract language is ambiguous. If the tribunal determines the contract is capable of only one reasonable interpretation — *i.e.* that there is no ambiguity — then no other construction is permissible. *Copy Sys. of Savannah, Inc. v. Page,* 398 S.E.2d 784, 785 (Ga. App. 1990). If the contract is ambiguous, the tribunal must apply the applicable rules of construction (O.C.G.A. § 13-2-2). If after doing so the trial court determines that an ambiguity remains, it becomes a jury question. *Travelers Ins. Co. v. Blakey,* 342 S.E.2d 308, 309 (Ga. 1986). And when determining the intent of parties to a contract, a court considers the language of the contract in light of the surrounding circumstances. *Pine Valley Apartments Ltd. Partnership v. First State Bank,* 237 S.E.2d 716, 718 (Ga. App. 1977); *Maiz v. Virani,* 253 F.3d 641, 658-59 (11th Cir. 2001).

A.   The Parties' agreement unambiguously authorizes collective action.

In determining whether the parties agreed to authorize collective arbitration, the Tribunal begins with the unambiguous language of the agreement. *Souther Fed. S&L Assn., etc. v. Lyle,* 290 S.E.2d 455, 458 (Ga. 1982). Here, the Agreement uses the broadest of terms to describe the claims subject to arbitration, clearly requiring that claims under the FLSA be arbitrated. And the Agreement guarantees the Technicians all the same substantive rights in arbitration that they would have had in court. This would include the right to collective action granted by the FLSA.

10

The Agreement requires that the Technicians arbitrate "all claims or controversies, past, present or future, arising out of an employee's employment or its termination." *See* Agreement, Exhibit 1, at p. 1. Specifically, the Agreement covers "claims for wages or other compensation due" and "claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance." *Id.* at p. 2. This language unambiguously contemplates arbitration of the Technicians' claims for wages due under the FLSA.

And in exchange for the Technicians' agreement to waive their Constitutional right to a jury trial, the Agreement guarantees that the Technicians will have the same rights in arbitration that they would have had in court:

> By entering into this Agreement, Employee does not waive his/her right to file an administrative claim or complaint with the appropriate administrative agency, but does waive his/her right to file a civil action and a jury trial, because the Agreement provides for an adequate and equal opportunity for the vindication of claims and complaints through this arbitration process."

*See* Agreement, Exhibit 1, at p. 1. This promise clearly and unambiguously contemplates collective action. The FLSA statute states that a claim may be brought "in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In court, there is no dispute that the Technicians would be allowed to assert their right to vindicate their FLSA claims collectively. Because the Agreement guarantees an equal opportunity to vindicate their FLSA claims in this arbitration, the Agreement unambiguously guarantees the Technicians the right to arbitrate collectively.

Another arbitrator examining a similar arbitration agreement has reached the same conclusion. *See Morganelli* et al. *v. Chemed Corp.,* et al., 2011 AAA Employment LEXIS 230 at *18-19, attached as Exhibit 3. There, like the Agreement in this case, the arbitration clause did

11

not explicitly authorize collective arbitration, but the parties agreed to arbitrate "any and all claims, disputes or controversies, arising out of or relating in any way to my ... employment." *Id.* Also like the clause at issue here, the parties' arbitration agreement required arbitration of "claims under federal, state and local statutory or common law..." Id. at *18. The arbitrator found that the expansive language represented the parties' agreement to collectively arbitrate FLSA actions:

> Given this expansive language describing the scope of the parties' duty to arbitrate, the [arbitration clause] must have been intended to cover FLSA collective actions which are expressly authorized by federal statute, 29 U.S.C. 216(b), and class actions which are expressly authorized by Rule 23 of the Federal Rules of Civil Procedure, a common procedural vehicle for enforcing state wage-and-hour laws.

*Id.* at *20.

The arbitrator rejected respondents' argument that the agreement intended claimants' claims to be arbitrated, but only on an individual basis, finding that interpretation "strained and unreasonable." *Id.* at 23-24. Given that the agreement required arbitration of all statutory claims, the arbitrator found "it would be incongruous to construe [the arbitration agreement] to permit Respondents to pick and choose which sections of which statutes are arbitrable and which are not." *Id.* at 24. Applying the rule of contract interpretation that a reasonable interpretation trumps an unreasonable, the arbitrator concluded that the parties' intent as embodied in the language of their arbitration agreement was to allow collective arbitration of the claimants' FLSA claims. *Id* at 19, 25.

In this case, the same logic applies. The parties agreed to arbitrate FLSA claims and agreed that the Technicians would have an "equal opportunity to vindicate" their FLSA claims in arbitration that they would have had in court. FLSA claims can be collectively vindicated in

court; it would be incongruous given the plain language of the Agreement for DirecTV to suggest the Technicians cannot collectively vindicate their FLSA rights in arbitration.

    B. <u>DirecTV's consent to collective arbitration may also be inferred under ordinary principles of contract interpretation and *Stolt-Nielsen*.</u>

While *Stolt-Nielsen* is explicit in requiring that the Tribunal must determine the parties' intent by examining the language in their arbitration agreement, it is silent on what contractual basis may support a finding that the parties agreed to authorize class-action arbitration in the absence of express authorization. *See S. Communications Services, Inc. v. Thomas*, 829 F. Supp. 2d 1324, 1336 (N.D. Ga. 2011) (*citing Stolt-Nielsen* at 1776 n. 10). However, *Stolt-Nielsen's* direction that a Tribunal may find consent to collective arbitration in the absence of an express authorization is consistent with the basic tenet of contract law that consent does not need to be express. *See Corey v. Clear Channel Outdoor, Inc.*, 683 S.E.2d 27, 31 (Ga. App. 2009) (Georgia law allows implied contractual terms), *see, e.g.,* Restatement (Second) of Contracts § 4 (1981) ("A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct.") Specifically, some terms of a contract may be implied by operation of law. *See S. Communications,* 829 F. Supp. 2d at 1333 (*citing* Restatement (Second) of Contracts § 5(2) (1981) ("A term of a contract is that portion of the legal relations *resulting from* the promise or set of promises which relates to a particular matter, *whether or not the parties manifest an intention to create those relations.*") (emphasis in original).

Therefore, if the Technicians' Agreement manifests no intention regarding collective arbitration, under *Stolt-Nielsen* and ordinary principles of contract interpretation, the arbitrator must identify a "default rule" in determining whether or not the parties implicitly authorized class arbitration. *S. Communications,* 829 F. Supp. 2d 1324 (N.D. Ga. 2011) (*citing Stolt-Nielsen* at 1768–69.) Although *Stolt-Nielsen* warns that arbitrators cannot base their decisions on public

13

policy, the Court's decision allows arbitrators to look to the law governing arbitrable claims (in that case, either federal maritime law or New York law) when choosing among reasonable interpretations of a "silent" contract. 130 S.Ct. at 1767-68. Here, where the Technicians are seeking to collectively vindicate their FLSA rights under the rules of the AAA, the FLSA statute and AAA rules provide the "default rules." Both contemplate and authorize some form of representative action. In *Stolt-Nielsen*, there was no law, custom or tradition in maritime law of litigating the claims at issue on a class-wide basis, which supported the conclusion that the parties did not consent to class arbitration. 130 S.Ct. at 1769. But in this case the law and custom support the Technicians' rights to arbitrate their FLSA claims collectively.

### C. The FLSA explicitly authorizes collective actions.

As previously discussed, the FLSA statute itself establishes that an individual has the right to bring a claim "for and in behalf of himself...and other employees similarly situated." 29 U.S.C. § 216(b).[3] The parties' Agreement, drafted by DirecTV, mandates that the Technicians' FLSA claims be arbitrated, but does not carve out an exception specifying that the Technicians are waiving their rights under the FLSA to collectively arbitrate. In the absence of any mention of collective or class arbitration in the Agreement, the arbitrator must follow the default rule provided by the FLSA in order to determine the parties' intent. And because the FLSA explicitly

---

[3] The right to bring wage claims collectively fits squarely with one of the central purposes of the collective action mechanism, which is to help ensure that small individual claims do not go unenforced. *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (FLSA collective actions allow "plaintiffs the advantage of lower individual costs to vindicate their rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged unlawful activity."); *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (the ability to bring a collective action under the FLSA overcomes "'the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights'") (citation omitted). Accordingly, FLSA actions are commonly enforced through the collective action mechanism.

authorizes collective actions, the arbitrator should find that the parties' Agreement manifests an intent to allow FLSA claims to be arbitrated collectively.

### D. The AAA's Rules provide for class actions.

The parties' Agreement specifies that the arbitration will be conducted by the AAA according to the AAA's "then-current employment arbitration rules/procedures." And the AAA has specified that this arbitration is to be conducted under its employment rules. However, this briefing on clause construction is not provided for in the AAA's employment rules; it is only envisioned in Rule 3 of the Supplementary Rules for Class Arbitrations:

> Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against the class (the "Clause Construction Award"). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.

AAA Supplementary Rules for Class Arbitrations, Rule 3.[4]

The Supplementary Rules lay out the AAA's procedures for conducting class arbitration. DirecTV's decision to request the Rule 3 Clause Construction briefing phase is tantamount to an admission that the Supplementary Rules apply to the parties' Agreement. And if the parties have agreed that the Supplementary Rules apply to the Agreement, this lends further support to the conclusion that the parties have agreed to collective arbitration.

### E. Courts and arbitrators interpreting *Stolt-Nielsen* have found that broad arbitration agreements similar to the Technicians' Agreement allow collective arbitration of FLSA claims.

As described above, the parties' Agreement is broad in its reach, covering "all claims or controversies, past, present or future, arising out of an employee's employment or its

termination" that either party brings against the other." *See* Exhibit 1 at p. 1. The Agreement provides that the Technicians have waived their right to a civil action, "because the Agreement provides for an adequate and equal opportunity for the vindication of claims and complaints through this arbitration process." *See* Agreement, Exhibit 1, at p. 1. And just like a court, "The Arbitrator shall apply the substantive law [and the law of remedies, if applicable] of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted." Exhibit 1, p. 3.

Courts evaluating similarly broad arbitration clauses with no mention of collective arbitration have found that the clauses permit collective arbitration. For example, in *Mork v. Loram Maintenance of Way, Inc.,* the arbitration clause at issue applied to "'claims or disputes of *any nature* arising out of or relating to the employment relationship' and "'statutory claims … arising out of or resulting from [plaintiff's] employment with [defendant].'" CIV. 11-2069 MJD/FLN, 2012 WL 38628 at *4 (D. Minn. Jan. 9, 2012). In evaluating whether to allow collective arbitration, the Court stated that the question before it was not "whether the Arbitration Clause used the precise words 'collective arbitration.' Rather, the Court must determine whether the Arbitration Clause evinces sufficient indicia of agreement between the parties that a claim within its scope may proceed on a collective basis." *Id.* The Court's analysis was straightforward – because the arbitration clause was broad enough to cover plaintiff's FLSA claims, and the FLSA provided that claims could be brought collectively, the Court found that plaintiff had a right to arbitrate his claims collectively. *Id.* The Court therefore compelled plaintiff to pursue his FLSA claims in arbitration, and allowed plaintiff to do so on a collective basis. *Id.* at 6. *See also Smith & Wollensky Rest. Group, Inc. v. Passow,* 831 F. Supp. 2d 390 (D.

---

[4] Available at:
http://www.adr.org/aaa/ShowPDF;jsessionid=zP4rPyWLyp73N1nHn6cp3F1x7G2pFhZ1YrQvYGlkr6148nCBhDZ

Mass. 2011) (upholding arbitrator's partial final award allowing plaintiff to arbitrate wage claims on behalf of a class because the wage claims were covered by the arbitration clause, and the law underlying those claims authorized an individual employee to bring a class action).

Additionally, arbitrators interpreting similarly "silent" agreements in light of Stolt-Nielsen have found that the parties agreed to class or collective action. Those tribunals applied the same logic of *Morganelli* et al. *v. Chemed Corp.,* et al., noted above, finding that by agreeing to broad clauses that mandate arbitration of certain statutory claims with a tradition of collective or class action, the parties have agreed to allow class or collective arbitration. *See Morangelli, et al. v. Chemed Corp., et al.* 2011 AAA Employment LEXIS 230 (2011) (Ruth D. Raisfeld, Arb.) (parties agreed to collective arbitration by mandating arbitration of FLSA claims), attached as Exhibit 3; and 2011 AAA Employment LEXIS 161 (Francis M. Mack, Arb.) (language in arbitration agreement that "any remedy available from a court under the law shall be available in the arbitration" showed parties' agreement to class arbitration where Texas Education Code authorized class litigation as a remedy for claimant's claims), attached as Exhibit 2.

## VI. Conclusion

The question before this Tribunal is not whether the parties' Agreement uses the precise words "collective arbitration." It does not. But this does not mean that the Agreement prevents the Technicians from exercising their FLSA rights collectively. The question before the Tribunal is whether the language of the parties' Agreement shows that the parties agreed to allow collective arbitration of FLSA claims. The Supreme Court in *Stolt-Nielsen* emphasized the long-established rule that arbitration is a product of agreement, and an arbitrator therefore cannot conduct an arbitration on a class-wide basis unless the parties have agreed to do so. The Supreme

---

T!1082660915?url=/cs/groups/commercial/documents/document/mdaw/mdax/~edisp/adrstg_004129.pdf.

Court and other courts interpreting *Stolt-Nielsen* have followed the canon of contract interpretation that an agreement may be inferred, specifying that in the absence of explicit authorization in an arbitration agreement, an arbitrator must look to the default rules and law underlying a claim in evaluating whether the parties have agreed to allow collective arbitration.

In this case, the Agreement mandates that the Technicians pursue their FLSA claims in arbitration. The FLSA therefore supplies the default rule to be used in evaluating whether the Agreement allows collective arbitration. Therefore, because the FLSA explicitly authorizes the Technicians to assert their rights on a collective basis, and FLSA claims are routinely pursued collectively, the parties have agreed to arbitrate FLSA claims collectively. Had DirecTV chose to include language prohibiting the Technicians from exercising their FLSA rights collectively, it could have done so. But as there is nothing in the parties' Agreement that would upset the default rule that FLSA claims can be collectively asserted, this Tribunal should find that the parties' Agreement permits collective arbitration.

Respectfully submitted,

**LEAR WERTS, LLP**                    **STUEVE SIEGEL HANSON LLP**

  /s/ Bradford B. Lear                     /s/ George A. Hanson
Bradford B. Lear                              George A. Hanson
Todd C. Werts                            Andrew W. Funk
2003 W. Broadway, Ste. 107               460 Nichols Road, Suite 200
Columbia, MO 65203                       Kansas City, Missouri 64112
Telephone:    (573) 875-1991                 Telephone:    (816) 714-7100
Facsimile:    (573) 875-1985                 Facsimile:    (816) 714-7101

Michele L. Hornish
203 N. LaSalle Ste. 2100
Chicago, IL  60601
Telephone:    (312) 558-1366
Facsimile:    (573) 875-1985

**ATTORNEYS FOR CLAIMANTS**

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

JOHN ARNDT,                               )
JEREMY MCMICHEN, AND                      )
STEPHEN PEACOCK,                          )
individually and on behalf of others      )
similarly situated,                       )
                                          )
     Claimants,   )       Case No. 30-160-00625-11
                                          )
vs.                                       )
                                          )
DIRECTV, INC.,                            )
                                          )
     Respondent.  )

## DIRECTV, INC.'S CLAUSE CONSTRUCTION BRIEF

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

PROCEDURAL HISTORY ................................................................... 3

ARGUMENT .......................................................................................... 5

I.  Because the Arbitration Agreements Are Silent On the Issue, DIRECTV
    Has Not Consented to Class, Collective, or Consolidated Arbitration. ....... 5

    A.  Class Arbitration May Not Be Imposed Where the Arbitration
        Agreement Is Silent on the Issue. ................................................... 5

        1.  The Supreme Court Requires *Affirmative* Consent to
            Class Arbitration. ...................................................................... 6

        2.  In *Concepcion*, the Court Reiterated Why a Defendant
            Cannot Be *Forced* into Class Arbitration, Which Is
            Slower, More Expensive and Riskier Than Bilateral Arbitration. ....... 8

        3.  Pursuant to *Stolt* and *Concepcion*, the Arbitration
            Agreements Do Not Permit Class Arbitration. ........................... 9

    B.  The *Stolt* Principles Have Been Applied To Bar Collective Arbitrations. ... 11

    C.  Consolidated Arbitration Also May Not Be Imposed Here Where the
        Arbitration Agreement is Silent. ................................................... 13

II. Contrary to Claimants' Position, DIRECTV Has Not Agreed to
    Arbitrate on a Class, Collective, or Consolidated Basis. ....................... 15

    A.  The Contractual Provisions Relied Upon By Claimants Do
        Not Establish Consent. ................................................................. 15

    B.  Principles of Contract Interpretation Are Irrelevant
        Since the Arbitration Agreement Is Silent With Respect
        to Class, Collective, or Consolidated Arbitration. ....................... 18

CONCLUSION ....................................................................................... 20

**BEFORE THE AMERICAN ARBITRATION ASSOCIATION**

JOHN ARNDT,                              )
JEREMY MCMICHEN, AND                     )
STEPHEN PEACOCK,                         )
individually and on behalf of others     )
similarly situated,                      )
                                         )
        Claimants,                       )          Case No. 30-160-00625-11
                                         )
vs.                                      )
                                         )
DIRECTV, INC.,                           )
                                         )
        Respondent.                      )

## DIRECTV, INC.'S CLAUSE CONSTRUCTION BRIEF

COMES NOW DIRECTV, Inc.[1] ("DIRECTV"), by and through counsel, and asks that the Arbitrator: (1) find that the Arbitration Agreements demonstrate that DIRECTV consented to bilateral arbitration only—not to class, collective or consolidated arbitration; and (2) rule that Claimants must re-file this matter as three separate arbitrations. As explained herein, DIRECTV's request is supported by Supreme Court precedent, by decisions from federal appellate courts—including the Eleventh Circuit—and by the Northern District of Georgia's recent Opinion regarding the Arbitration Agreements at issue.

## INTRODUCTION

Arbitrators derive their authority from the agreement of the parties to arbitrate. *See Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010). Indeed, an arbitrator "has no general charter to administer justice for a community which

---

[1] DIRECTV, Inc. merged into DIRECTV, LLC, and DIRECTV, LLC agrees to its substitution as the Respondent.

1

transcends the parties" but rather is "part of a system of self-government created by and confined to the parties" to the arbitration agreement. *Id.* at 1774 (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960)). An arbitrator's power to resolve disputes is limited to that which is provided for in the four corners of the arbitration agreement. *Id.* at 1773. Accordingly, the Federal Arbitration Act ("FAA") requires courts and arbitrators to enforce arbitration agreements according to their terms, with the primary goal being to effectuate the intent of the parties. *Id.* at 1773, 1775.

Where (as here) an arbitration agreement is silent on the question of class, collective, or consolidated arbitration, it is well-established that the parties have *not* consented to resolve their disputes on a class, collective, or consolidated basis. *See, e.g., Stolt*, 130 S. Ct. at 1776 (class arbitration); *Fitzhugh v. Am. Income Life Ins. Co.*, No. 1:11-cv-533, at 11 (N.D. Ohio Nov. 3, 2011) (collective arbitration); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1989) (consolidated arbitration).

As the Honorable J. Owen Forrester of the Northern District of Georgia explained in reviewing the instant Arbitration Agreements, this case presents an "easy" question. *See* Court's May 3, 2012 Order, attached hereto as Exhibit A. The three Claimants are seeking to enforce arbitration agreements that each one of them individually entered into with DIRECTV (hereinafter "Arbitration Agreements," attached hereto as Exhibit B). *Nowhere* in the Arbitration Agreements do the parties reference class, collective, or consolidated arbitration. *See* Ex. B. Claimants have admitted that the Arbitration Agreements do not contain the phrases "class action" or "collective action." *See* May 10, 2012 Letter to Arbitrator at 4, attached hereto as Exhibit C. Thus, the Arbitration

Agreements are silent, and it is clear that the parties have not consented to class, collective, or consolidated arbitration. *See Stolt*, 130 S. Ct. at 1776; *Fitzhugh*, No. 1:11-cv-533, at 11; *Protective Life*, 873 F.2d at 282. Further, the provisions of the Arbitration Agreements demonstrate only consent to bilateral arbitration. DIRECTV, therefore, respectfully requests that the Arbitrator issue a Clause Construction Award pursuant to American Arbitration Association ("AAA") Supplementary Rule 3 declaring that this arbitration may not proceed on a class, collective, or consolidated basis, and that Claimants must pursue their claims against DIRECTV in individually-filed arbitration proceedings.

## PROCEDURAL HISTORY

On November 9, 2011, Claimants, three former DIRECTV employees, jointly filed a consolidated demand for arbitration against DIRECTV which sought certification of a class and/or collective arbitration for alleged violations of the Fair Labor Standards Act ("FLSA"). Compl. ¶¶ 31-43. Because the Arbitration Agreements signed by Claimants were silent on the issue, DIRECTV filed a declaratory judgment action in the Northern District of Georgia on March 9, 2012 seeking a declaration that: (1) it could not be subjected to class, collective, or consolidated arbitration proceedings absent its consent; and (2) Claimants must pursue their claims against DIRECTV separately as individual arbitrations. DIRECTV also sought a stay of this arbitration on the grounds that it was proceeding as a consolidated arbitration and being administered as a putative class/collective action before a court or arbitrator had determined that DIRECTV had consented to something other than bilateral arbitration.

As referenced above, on May 3, 2012, Judge Forrester issued his ruling on DIRECTV's emergency motion for a stay, *see* Ex. A, stating: DIRECTV's declaratory judgment action raised two issues: "(1) who should determine if class arbitration is permitted under the parties' agreements – the district court or the arbitration panel and (2) whether the parties' agreements permit class arbitration." *Id.* at 4.[2] According to Judge Forrester, the second question "appear[ed] to be the easier to answer." *Id.* He explained that, in *Stolt*, "the Supreme Court held that imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is not consistent with the [FAA]." *Id.* He further explained, "a 'party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.'" *Id.* (citing *Stolt*, 130 S. Ct. at 1775 (emphasis in original)). Thus, "the parties' mere silence on the issue of class-action arbitration" would not constitute "consent to resolve their disputes in class proceedings." *Id.* at 5 (citing *Stolt*, 130 S. Ct. at 1776). Judge Forrester ultimately held that the question of whether the parties consented to class, collective, or consolidated arbitration was for the arbitrator to decide. *Id.* at 11. While Judge Forrester's Opinion that the Arbitration Agreements did not evidence consent to class arbitration—which cannot be imposed absent consent—is arguably not "law of the case," his Opinion is both instructive and highly persuasive.

Pursuant to AAA's Supplementary Rule 3, the Arbitrator "shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration

---

[2] As the court explained in its Order, these issues were raised and briefed in connection with DIRECTV's emergency motion to stay. *See* Order, Ex. A at 4 n.2. In support of their arguments, the court noted that Claimants had attached, as an exhibit to their response brief, an additional brief which had not yet been filed, but which they intended to file prior to their deadline to respond to DIRECTV's complaint. *Id.*

clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award')." *See* Supplementary Rule 3. Supplementary Rule 3 further provides that, after the Arbitrator has issued the Clause Construction Award, she shall stay all proceedings "for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate" the award. *Id.*

Accordingly, pursuant to the ruling of Judge Forrester and Supplementary Rule 3, the parties now request that the Arbitrator issue a Clause Construction Award deciding whether the Arbitration Agreements at issue establish that DIRECTV consented to class, collective, or consolidated arbitration.[3]   DIRECTV contends that the Arbitration Agreements establish no such consent.

## ARGUMENT

I.     **Because the Arbitration Agreements Are Silent on the Issue, DIRECTV Has Not Consented to Class, Collective, or Consolidated Arbitration.**

Because the Arbitration Agreements do not reference class, collective, or consolidated arbitration, DIRECTV submits that this Arbitrator cannot impose such on the parties and is constrained by the Supreme Court decision in *Stolt*, Eleventh Circuit precedent, and certain case law interpreting *Stolt*. *See, e.g., Stolt*, 130 S. Ct. at 1776; *Fitzhugh*, No. 1:11-cv-533, at 11; *Protective Life*, 873 F.2d at 282.

A.     **Class Arbitration May Not Be Imposed Where the Arbitration Agreement Is Silent on the Issue.**

---

[3]     Supplementary Rule 3 provides that "[i]n construing the applicable clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." Thus, the fact that AAA has Rules for administering putative class actions cannot weigh in favor of a determination for Claimants at this Clause Construction phase.

1.    The Supreme Court Requires *Affirmative* Consent to Class Arbitration.

In *Stolt*, the Supreme Court resolved once and for all a question that had been dividing lower courts for years: "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue was consistent with the [FAA]." *Stolt*, 130 S. Ct. at 1764. The Court ultimately held that "the parties' mere silence on the issue of class arbitration" would not "constitute[] consent to resolve their disputes in class proceedings," and that imposing class arbitration in such circumstances would contravene an arbitrator's "limited powers under the FAA." *Id.* at 1776.

The claimants in *Stolt* submitted a demand for class arbitration to the AAA pursuant to the Supplementary Rules. *Id.* at 1765. The parties had agreed that the arbitration clause at issue was "silent" with respect to class arbitration, meaning that "no agreement" had been reached on the issue. *Id.* at 1766. The arbitrators ruled that, because there was no evidence of intention to preclude class arbitration, the parties by their silence had consented to proceed on a class basis. *Id.* The parties sought judicial review of the arbitrators' award pursuant to 9 U.S.C. § 10(a)(4), and the case made its way to the Supreme Court. *Id.*

The Court held that the arbitrators *exceeded their authority* under the FAA by ruling that the parties consented to class arbitration where the arbitration clause was silent on the issue. *Id.*[4] at 1770. The Court explained that, although it is appropriate in certain contexts to presume that parties to an arbitration agreement "implicitly authorize the

---

[4] *See also Reed v. Florida Metropolitan University, Inc.*, No. 11-50509, 2012 U.S. App. LEXIS 10048, at *44-45 (5th Cir. May 18, 2012) (ruling that an arbitrator *exceeded his authority* by ordering the parties to proceed with class arbitration without a contractual basis to do so and ordering, "this arbitration must proceed bilaterally").

arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement," "[a]n implicit agreement to authorize class-action arbitration ... is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Id.* at 1775. The Court reasoned:

> This is so because class-action arbitration *changes the nature of arbitration* to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator. In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. But the relative benefits of class-arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration.

*Id.* at 1775 (internal case citations omitted) (emphasis added).

The Court went on to describe some of the "fundamental" differences between bilateral arbitration and class arbitration--differences to which DIRECTV never consented here. *See id.* at 1776. First, "[a]n arbitrator chosen according to an agreed-upon procedure ... no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties." *Id.* Second, the presumption of privacy that applies in bilateral arbitrations does not apply in class arbitrations pursuant to the AAA rules. *Id.* Third, the arbitrator's award "no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well." *Id.* Finally, class arbitration has high commercial stakes, but limited judicial review. *Id.* According to the Court, these differences between bilateral and class arbitration are "too great" to allow arbitrators to presume that "mere silence on the issue of class-action arbitration constitutes consent to resolve ... disputes in class proceedings." *Id.*

7

2.     In *Concepcion*, the Court Reiterated Why a Defendant Cannot Be *Forced* into Class Arbitration, Which Is Slower, More Expensive and Riskier Than Bilateral Arbitration.

Recently in *Concepcion*, the Supreme Court reiterated that imposing class arbitration absent a party's consent is inconsistent with the FAA. *AT&T Mobility v. Concepcion*, 131 S.Ct. 1740, 1751 (2011). First, the Court explained that the switch from bilateral to class arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass." *Id.* at 1751. For example, data from the AAA showed that the average bilateral arbitration could be resolved in six months, but that, as of the date of the Court's opinion, no class arbitration had been resolved in less than one year. *Id.*

Second, the Court noted that, unlike bilateral arbitration, class arbitration "*requires* procedural formality" to satisfy due process requirements. *Id.* (emphasis in original). The Court questioned whether Congress intended, when it passed the FAA, to entrust arbitrators with ensuring that third parties' due process rights are satisfied. *Id.* at 1751-52.

Third, arbitration *greatly increases risks to defendants* because "[t]he absence of multilayered review makes it more likely that errors will go uncorrected." *Id.* at 1752. While it might be logical for defendants to be willing to accept this risk in bilateral arbitration, the same is not true for class arbitration, where the defendant's exposure is magnified. *Id.* The Court declared that it was "hard to believe that defendants would bet the company with no effective means of review." *Id.* For these reasons, the Court concluded that "[a]rbitration is *poorly suited for the higher stakes of class litigation*." *Id.* (emphasis added).

3.   Pursuant to *Stolt* and *Concepcion*, the Arbitration Agreements Do
Not Permit Class Arbitration.

As Claimants admit in Exhibit C hereto, the Arbitration Agreements do not refer to class arbitration (nor do they contemplate such). Accordingly, the parties have not "reached an agreement" with respect to class arbitration, rendering the Arbitration Agreements silent within the meaning of *Stolt*. *See Stolt*, 130 S. Ct. at 1766. Therefore, *Stolt* requires a ruling that the instant matter cannot proceed as a class arbitration. *See id.*

While Claimants contend that *Stolt* does not establish a bright line rule that class arbitration is permissible only where an arbitration agreement explicitly provides for class proceedings, as noted by Judge Forrester, "there is no getting around the Supreme Court's clear direction that consent to class arbitration cannot be presumed." *See* Ex. A at 5, n.3 (quoting *Reed Elsevier, Inc. v. Crockett*, No. 3:10cv248, 2012 U.S. Dist. LEXIS 23947 (S.D. Ohio Feb. 24, 2012) ("noting that it would be 'inappropriate' to 'limit or distinguish' *Stolt-Nielsen* where Supreme Court 'decision must be given a full and fair reading' and limiting would 'contravene the continued rollback of classwide arbitration exemplified by' *Concepcion*")). Indeed, *Stolt* explicitly declares that arbitration cannot proceed on a class basis "unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt*, 130 S. Ct. at 1775 (emphasis in original).

As in *Stolt* and *Concepcion*, there is no contractual basis for concluding that DIRECTV agreed to arbitrate on a class basis. In fact, numerous provisions of the Arbitration Agreements establish that, pursuant to the rationales of *Stolt* and *AT&T Mobility*, the only type of arbitration contemplated by DIRECTV and to which DIRECTV consented was a *bilateral arbitration between DIRECTV and the employee signing the Arbitration Agreement*. For example:

- The Arbitration Agreement is between "the Company" and the "Employee" in the singular, thus establishing that the parties did not consent to have the Arbitrator selected pursuant to that Arbitration Agreement decide the rights of other DIRECTV employees. *See* Ex. B; *see also Stolt*, 130 S. Ct. at 1774 (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960) for the proposition that an arbitrator "has no general charter to administer justice for a community which transcends the parties" to the arbitration agreement).

- The Arbitration Agreement provides a detailed procedure for the selection of a single Arbitrator to resolve the dispute between the employee and DIRECTV. *See* Ex. B. Because absent class members have no ability to participate in the selection of the Arbitrator, the absent class members have not consented to have the arbitrator selected by DIRECTV and the employee who signed the Arbitration Agreement resolve the absent class members' claims. *See Stolt*, 130 S. Ct. at 1776 (declaring that class arbitration is fundamentally different than bilateral arbitration because "[a]n arbitrator chosen according to an agreed-upon procedure … no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties."). Likewise, DIRECTV has not agreed to have a single Arbitrator decide its fate with respect to multiple employees (especially given the limited judicial review of arbitration decisions).

- The first paragraph of the Arbitration Agreement provides that "[t]he Company's Arbitration Procedure is intended to be an impartial, *cost effective and speedy mechanism* for resolving employment or other disputes between the Company and its employees." *See* Ex. B (emphasis added). Pursuant to *Concepcion*, the primary benefit of bilateral arbitration is that it is cost effective and speedy, while class arbitration is neither. *See Concepcion*, 131 S. Ct. at 1751 (holding that the switch from bilateral to class arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass").

- With respect to discovery, the Arbitration Agreements provide that "[e]ach party shall have the right to take the deposition of *one individual* and any expert witness designated by another party." *See* Ex. B (emphasis added). DIRECTV obviously was not agreeing that it could depose only *one* of the Claimants, while Claimants together could take three (or hundreds of) individual depositions. This discovery provision indicates that DIRECTV consented to bilateral arbitration only.

- With respect to the location of the arbitration, the Arbitration Agreements state that it "shall take place in or near the city in which employee is or was last employed by the Company." *See* Ex. B. Once again, this forum

selection clause is logical in bilateral arbitration, but makes no sense in the context of class arbitration, where class members may be dispersed nationwide. *See Stolt*, 130 S. Ct. at 1776.

Accordingly, the Arbitration Agreements' provisions make clear that the only type of arbitration proceeding contemplated by and consented to by DIRECTV is bilateral arbitration between DIRECTV and the employee signing the agreement. *See Clark v. CHDP Condo, LLC*, AAA No. 11-115-Y-01921-09 (July 19, 2010) (arbitrator held that where the arbitration clause at issue provided for arbitration between the "Seller" and "Purchaser" and where the contract acknowledged a preference for arbitration because of the "substantial savings of time and expense for all parties," "there was a strong indication that the parties had agreed solely to individual actions.").[5] Thus, a decision should be issued that the Arbitration Agreements do not show that DIRECTV consented to class arbitration and that the Claimants should proceed with individual arbitrations.

### B.    The *Stolt* Principles Have Been Applied To Bar Collective Arbitrations.

The well-established rule that parties cannot be subjected to class arbitration where the arbitration agreement is silent on the issue applies to collective arbitration as well.  Indeed, the principles of *Stolt* have prevented attempts to bring both collective and class FLSA actions in arbitration. *See Quilloin v. Tenet Healthsystem Philadelphia, Inc.*, 673 F.3d 221, 227, 232 (3d Cir. 2012) (applying principles of *Stolt* with respect to "silence" where plaintiff sought certification of a collective action under the FLSA and where the arbitration clause was silent with respect to class/collective arbitration);

---

[5]    Judge Forrester clearly had before him the Arbitration Agreements at issue here, including the provisions cited by Claimants, when he asserted that whether the parties consented to class arbitration was the easier question.

*Fitzhugh*, No. 1:11-cv-533, at 9-11[6] (rejecting the plaintiff's arguments that an opt-in class can proceed and ordering the plaintiff to proceed with her FLSA claims on an individual basis where the parties' agreement was silent on the issue); *Goodale v. George S. May Int'l Co.*, No. 10 C 5733, 2011 U.S. Dist. LEXIS 37111, at *6-8 (N.D. Ill. Apr. 5, 2011) (compelling FLSA claims to arbitration on an individual basis); *see also Slawienski v. Nephron Pharm. Corp.*, No. 1:10-CV-0460-JEC, 2010 U.S. Dist. LEXIS 130365, at *6-7 (N.D. Ga. Dec. 9, 2010) (applying principles of *Stolt* where plaintiff sought certification of a collective action under the FLSA, but where the arbitration clause contained a class/collective action waiver).

In *Fitzhugh*, the plaintiff sought to arbitrate her FLSA claim on a class or collective basis. *See Fitzhugh*, 1:11-cv-533 at 10. The court, however, noted that the arbitration agreement in question was "silent on the question of class or collective arbitration." *Id.* Thus, pursuant to *Stolt* and *Concepcion*, the court held that the plaintiff's "class/collective action claims must be dismissed," while the plaintiff's *individual* claims must be referred to arbitration. *Id.* at 11.

Similarly, in *Goodale*, the plaintiff filed an FLSA claim and sought certification of a collective action. *See Goodale*, No. 10 C 5733, Dkt. 1 at ¶ 64. The court determined that the arbitration clause was silent and held that *Stolt* "protects a party from being compelled to arbitrate class claims where the arbitration agreement is silent with respect to such claims." *Goodale*, 2011 U.S. Dist. LEXIS 37111, at *7-8 (applying the holding of *Stolt* regarding class arbitration to plaintiff's request for collective arbitration). Thus, the court referred only the plaintiff's individual claims to arbitration. *Id.* at *8.

---

[6] See Exhibit D hereto, cases cited.

Here, the same reasoning that prevents class action arbitration in the face of a silent arbitration agreement also prevents collective action arbitration. DIRECTV did not consent to having a single arbitrator decide claims regarding multiple employees, particularly, where there is only limited judicial review of an arbitrator's final decision on potentially hundreds of cases. Further, speed and privacy are sacrificed with collective action arbitrations just as with class action arbitrations. Because the principles of *Stolt* apply to collective arbitration as well as class arbitration, and because the Arbitration Agreements at issue are silent with respect to collective arbitration, DIRECTV has not consented to arbitrate on a collective basis. *See Stolt*, 130 S. Ct. at 1776; *see also Quilloin*, 673 F.3d at 232; *Fitzhugh*, No. 1:11-cv-533, at 9-11 (N.D. Ohio November 3, 2011); *Goodale*, No. 10 C 5733, 2011 U.S. Dist. LEXIS 37111, at *6-8 (N.D. Ill. Apr. 5, 2011); *Slawienski*, No. 1:10-CV-0460-JEC, 2010 U.S. Dist. LEXIS 130365, at *6-7 (N.D. Ga. Dec. 9, 2010).[7]

### C.   Consolidated Arbitration Also May Not Be Imposed Here Where the Arbitration Agreement is Silent.

Even prior to *Stolt*, the law of the Eleventh Circuit provided that parties could not be subjected to consolidated arbitration where the arbitration agreement was silent. *See Protective Life*, 873 F.2d at 282. In *Protective Life*, the Eleventh Circuit addressed the question "whether a district court may consolidate arbitration proceedings if the parties

---

[7] Even prior to the recent Supreme Court decisions, the Eleventh Circuit enforced a collective action waiver in an FLSA action. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *see also De Oliveira v. Citicorp North America, Inc.*, No. 8:12-cv-251-T-26TGW, 2012 U.S. Dist. LEXIS 69573 (M.D. Fla. May 18, 2012) (recently enforcing a collective action waiver in an arbitration agreement and compelling arbitration of FLSA claims). Thus, the law is clear that FLSA collective actions deserve no special treatment, and DIRECTV cannot be forced to proceed with a collective action arbitration to which it has not consented.

have not provided for consolidation in their arbitration agreements." *Id.* The court concluded that "[a district court] may not." *Id.* (vacating and remanding the district court's order consolidating arbitrations).

Much like the present case, there were multiple arbitration agreements at issue in *Protective Life*: an arbitration agreement between Protective Life and Lincoln, and a separate arbitration agreement between Protective Life and Munich. *Id.* The arbitration agreements did not provide for consolidated arbitration, and each arbitration agreement required arbitration "only between the parties to that agreement." *Id.* at 283. Thus, according to the court, "[t]he three parties never agreed to consolidated arbitration." *Id.*

Similarly, the Arbitration Agreements at issue here do not provide for consolidated arbitration, and DIRECTV cannot be compelled to arbitrate these three Claimants' allegations in a single arbitration. *See id.; see also Am. Centennial Ins. Co. v. Nat'l Cas. Co.*, 951 F.2d 107, 108 (6th Cir. 1991) (affirming the denial of an insurance company's motion to compel arbitration on a consolidated basis, and holding that "a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation" and reasoning, "because the [FAA] was designed to overrule the historical refusal of the judiciary to enforce agreements to arbitrate, it follows that a court is not permitted to interfere with private arbitration agreements in order to impose its own view of speed and economy. This is the case even when the result would be the possibly inefficient maintenance of separate proceedings"), citing *Dean Witter Reynolds, Inc.*, 470 U.S. 213, 217, 219 (1985); *Philadelphia Reinsurance Corp. v. Employers Inc. at Wausau*, No. 02-1943, 61 Fed. Appx. 816, 2003 U.S. App. LEXIS 6198 (3d Cir. Mar. 31, 2003)

14

(unpublished); *United Kingdom v. Boeing Co.*, 998 F.2d 68 (2d Cir. 1993); *Beasler v. Continental Grain Co.*, 900 F.2d 1193 (8th Cir. 1990); *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145 (5th Cir. 1987); *Weyerhauser Co. v. W. Seas Shipping Co.*, 743 F.2d 635 (9th Cir. 1983), *cert. denied*, 469 U.S. 1061 (1984); *Nat'l Casualty Co. v. Am. Bankers Ins. Co.*, No. 05-71843, 2005 U.S. Dist. LEXIS 45843 (E.D. Mich. September 20, 2005). Thus, it is clear that the instant, multi-Claimaint arbitration is improper where DIRECTV consented only to bilateral arbitration, and the Claimants should be required to proceed with three, separate arbitrations.

**II.     Contrary to Claimants' Position, DIRECTV Has Not Agreed to Arbitrate on a Class, Collective, or Consolidated Basis.**

In their May 10, 2012 letter, Claimants conceded that the Arbitration Agreements at issue do not reference class or collective arbitration. *See* Ex. C at 4. They nevertheless take the erroneous position that DIRECTV may be subjected to class, collective, or consolidated arbitration. *Id.* Their arguments fail.

**A.     The Contractual Provisions Relied Upon By Claimants Do Not Establish Consent.**

In their May 10, 2012 letter, Claimants point to three contractual provisions in the Arbitration Agreements which they incorrectly claim establish DIRECTV's consent to arbitrate on a class, collective, or consolidated basis: (1) the definition of "employee"; (2) the agreement to arbitrate "claims for wages"; and (3) the agreement to arbitrate all claims premised on federal statute. *See* Ex. C at 4-5. None of these contractual provisions, however, establish DIRECTV's consent to arbitrate on a class, collective, or consolidated basis.

First, it is apparent from the plain language of the Arbitration Agreement that the reason "Employee" is defined to include "all current and former employees," is to clarify that the Arbitration Agreement does not cease to apply when an individual is no longer an employee of DIRECTV. *See* Ex. B. There is no basis from which to conclude that "all current and former employees" of DIRECTV are somehow parties to, or have consented to the provisions of, the Arbitration Agreement between DIRECTV and the employee who signed the Arbitration Agreement in question. This is especially true in light of the other provisions of the Arbitration Agreement, which contemplate only bilateral arbitration. *See* Section I. A. 3, *supra*. When construed as a whole, it is apparent that the only parties to each Arbitration Agreement are DIRECTV and the employee signing the agreement. Thus, the definition of "Employee" does not establish DIRECTV's consent to arbitrate on a class, collective, or consolidated basis.

Second, DIRECTV's agreement to arbitrate "claims for wages" and all claims premised upon federal statute does not establish consent to arbitrate on a collective basis under the FLSA. Claimants' argument that consent to arbitrate a broad array of disputes establishes consent to arbitrate on a class basis has been rejected by courts and arbitrators alike. *See Stolt*, 130 S.Ct. at 1765, 1776 (holding that the parties had not consented to arbitrate on a class basis even though the arbitration clause stated that it applied to "[a]ny dispute"); *Reed v. Florida Metropolitan University, Inc.*, No. 11-50509, 2012 U.S. App. LEXIS 10048, at *33-37 (5th Cir. May 18, 2012) ("any dispute" and "any remedy" language did not establish consent to arbitrate on a class basis); *Reed Elsevier, Inc. v. Crockett*, No. 3:10cv248, 2012 U.S. Dist. LEXIS 23947, at *28-30 (S.D. Ohio Feb. 24, 2012) ("any controversy" language did not establish consent to arbitrate on a class basis);

*Mensch v. Alta Colleges, Inc.*, AAA No. 11-516-00995-09, at 32 (July 16, 2010) ("any dispute" and "any remedy" language did not establish consent to arbitrate on a class basis).

In *Reed*, for example, the plaintiff argued that the parties' agreement to arbitrate "any dispute" and for the arbitrator to award "any remedy" constituted consent to arbitrate on a class basis. *Reed*, 2012 U.S. App. LEXIS 10048, at *33-37. With respect to the "any dispute" language, the Fifth Circuit declared:

> On its face, the "any dispute" clause merely reflects an agreement between the parties to arbitrate their disputes. [*Stolt*] makes clear, however, that an "implicit agreement to authorize class-arbitration … is *not* a term that the arbitrator may infer solely from *the fact of the parties' agreement to arbitrate*." 130 S. Ct. at 1775 (emphasis added). This clause is therefore not a valid contractual basis upon which to conclude that the parties agreed to submit to class arbitration.

*Id.* at *34. The court further concluded that the "any remedy" language did not establish consent to arbitrate on a class basis because "a class action cannot properly be considered a remedy under state or federal law." *Id.* at *36.

The plaintiff in *Reed* also argued that his claim could proceed on a class basis because the Texas Education Code allowed for class actions to address violations of that statute. *Id.* The court rejected this argument as well, reasoning that "the mere fact that the parties would otherwise be subject to class action in the absence of an arbitration agreement is not a sufficient basis to conclude that they agreed to class arbitration when they entered into an arbitration agreement." *Id.* at *37.

Just as in *Reed*, DIRECTV's agreement to arbitrate "claims for wages" and other federal statutory claims merely establishes DIRECTV's consent to arbitrate those types of disputes. *See id.* at *34. Those provisions do not establish DIRECTV's consent to

arbitrate on a collective basis. *See id.* Pursuant to *Reed*, the fact that the FLSA provides

that FLSA claims may be brought as a collective action when they are brought in court

"is not a sufficient basis to conclude" that DIRECTV agreed to collective arbitration

when it entered into the Arbitration Agreements. *See id.* at *37. *Stolt* and her progeny

negate Claimants' argument that DIRECTV's consent to arbitrate "claims for wages" is

consent to arbitrate as a class or collective action. *See Stolt*, 130 S.Ct. at 1765, 1776;

*Reed*, No. 11-50509, 2012 U.S. App. LEXIS 10048, at *33-37; *Reed*, No. 3:10cv248,

2012 U.S. Dist. LEXIS 23947, at *28-30; *Mensch*, AAA No. 11-516-00995-09, at 32.

Accordingly, the contractual provisions relied upon by Claimants do not establish

that DIRECTV consented to arbitrate on a class, collective, or consolidated basis.

**B.   Principles of Contract Interpretation Are Irrelevant Since the Arbitration Agreement Is Silent With Respect to Class, Collective, or Consolidated Arbitration.**

In their May 10, 2012 letter, Claimants ask the Arbitrator to ignore the fact that

the Arbitration Agreements are silent and instead look to principles of contract

construction, industry and practice, and sophistication of the parties to determine whether

DIRECTV should be compelled to arbitrate on a class, collective, or consolidated basis

absent its consent. *See* Letter, Ex. C at 4-5 (arguing that the Arbitrator should consider

tradition in the industry, the parties' level of sophistication, DIRECTV's role as the

drafter, and the degree of negotiation when determining whether DIRECTV consented to

class, collective, or consolidated arbitration).

After *Stolt*, however, courts and arbitrators have rejected resorting to the types of

contract construction principles or extrinsic evidence suggested by Claimants where an

arbitration agreement is silent. *See Reed*, 2012 U.S. App. LEXIS 10048, at *37 (rejecting

18

argument that class arbitration can be imposed against the drafter of a contract where it is silent on the issue of class arbitration); *Chen-Oster v. Goldman, Sachs & Co.*, 785 F.Supp.2d 394, 404-405 (S.D.N.Y. 2011) (holding that principles of industry custom and the relationship between the parties were not relevant to determine whether the parties consented to class arbitration because, where the arbitration clause was silent with respect to class arbitration, there was no ambiguity which allowed the court to look beyond the four corners of the contract); *Emergency Physicians of St. Clare's, LLC v. ProAssurance Corp.*, AAA No. 11-195-Y-01789-10 at 14-15 (April 11, 2011) (arbitration decision finding that the arbitration agreement was "unambiguously silent" and that the "lack of ambiguity eliminates the need to consider evidence outside the four corners of the document"); *Mensch*, AAA No. 11-516-00995-09, at 28-9 (arbitrator rejected argument that sophistication of the parties was relevant to determine whether they consented to class arbitration).

For instance, in *Chen-Oster*, the court determined that where the contract was silent on class arbitration, there was no ambiguity that allowed going outside the contract to issues of industry practice. *Chen-Oster*, 785 F. Supp. 2d at 404. The court stated, "As I already determined in denying the plaintiff's motion to compel, there is no ambiguity on the face of the contract; it is simply silent with respect to class arbitration. . . Thus, the plaintiff's argument that industry custom and the relationship between the parties demonstrate an intent to arbitrate on a class basis impermissibly rely on extrinsic evidence, and they therefore fail." *Id.* at 404 (citing *Wyly v. Ca. Inc.*, No. 05 CV 4430, 2009 U.S. Dist. LEXIS 90037, at *9 (E.D. N.Y. Sept. 2, 2009) ("Silence alone does not equate to ambiguity.")).

Similarly, in *Reed*, 2012 U.S. App. LEXIS 10048, at *37, the Fifth Circuit found that principles of "construction against the drafter" had no place in the analysis of class arbitration where the agreement was silent on class arbitration. The court stated:

> The arbitrator suggested that the School, as drafter of the agreement, had an obligation to affirmatively state that the agreement precluded class arbitration. This rationale, however, is directly contrary to Stolt-Nielsen's holding that arbitrators should *not* "presume, consistent with their limited powers under the FAA, that the parties' mere silence. . .constitutes consent" to class arbitration. *Id. at 1776. Stolt-Nielsen* requires that the parties "agree to authorize" class arbitration, not merely that they fail to bar such a proceeding. *Id.* (emphasis omitted). We conclude, therefore, that the arbitrator lacked a contractual basis upon which to conclude that the parties agreed to authorize class arbitrations.

*Id.* at *37-8 (emphasis added).

Accordingly, where an arbitration agreement is clearly silent on class, collective or consolidated arbitration, the sophistication of the parties, principles of construing against the drafter, and extrinsic evidence are irrelevant. *See Reed*, 2012 U.S. App. LEXIS 10048, at *37; *Chen-Oster*, 785 F.Supp.2d at 404-405; *Emergency Physicians of St. Clare's, LLC*, AAA No. 11-195-Y-01789-10 at 14-15 (April 11, 2011); *Mensch*, AAA No. 11-516-00995-09, at 28-9; *Wyly*, No. 05 CV 4430, 2009 U.S. Dist. LEXIS 90037, at *9. Thus, DIRECTV cannot be compelled to arbitrate on a class, collective, or consolidated basis where the Arbitration Agreements are silent on the issue.

## CONCLUSION

As Claimants concede, the Arbitration Agreements in question do not reference class, collective, or consolidated arbitration. Pursuant to *Stolt*, Eleventh Circuit law, and case law interpreting *Stolt*, parties cannot be compelled to arbitrate on a class, collective, or consolidated basis where the arbitration agreements are silent on the issue. In fact, several provisions of the Arbitration Agreements establish that the only kind of

20

arbitration contemplated by DIRECTV and to which DIRECTV consented was bilateral arbitration with the individual employee signing the agreement.  Thus, there is no basis from which to conclude that DIRECTV (or any of the Claimants) consented to arbitrate on a class, collective, or consolidated basis.

WHEREFORE, DIRECTV respectfully requests that the Arbitrator issue a Clause Construction Award declaring that DIRECTV has not consented to arbitrate on a class, collective, or consolidated basis and requiring Claimants to arbitrate their claims individually.

Respectfully submitted,

McGuireWoods LLP

Halima Horton
Ga. Bar No. 367888
hhorton@mcguirewoods.com
Promenade II, Suite 2100
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 443-5500
Facsimile: (404) 443-5599

Amy B. Manning
IL. Bar No. 6209407
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
amanning@mcguirewoods.com

Littler Mendelson, P.C.

Kimberly Yates
MO Bar No. 49879
Patricia J. Martin
MO Bar No. 57420
One Metropolitan Square

21

211 North Broadway, Suite 1500
St. Louis, MO  63102

*Counsel for Respondent*

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| JOHN ARNDT, | ) | |
| JEREMY MCMICHEN, AND | ) | |
| STEPHEN PEACOCK, | ) | |
| individually and on behalf of others | ) | |
| similarly situated, | ) | |
| | ) | |
| Claimants, | ) | Case No. 30-160-00625-11 |
| | ) | |
| vs. | ) | |
| | ) | |
| DIRECTV, INC., | ) | |
| | ) | |
| Respondent. | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of June, 2012, ***DIRECTV, Inc's Clause Construction Brief*** was served via electronic filing and upon Claimants by United States Mail, addressed as follows:

Andrew W. Funk, Esq.
George A. Hanson
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO  64112

Bradford B. Lear, Esq.
Todd C. Werts, Esq.
Lear Werts, LLP
2003 West Broadway, Suite 107
Columbia, MO  65203

Michele L. Hornish, Esq.
Lear Werts, LLP
203 North LaSalle, Suite 2100
Chicago, IL  60601

The undersigned further certifies that ***DIRECTV, Inc's Clause Construction Brief*** has been filed with the American Arbitration Association and served via electronic mail, and two copies via United States Mail to the following:

Ms. Camille Stayman
Case Manager
American Arbitration Association
2200 Century Parkway
Suite 300
Atlanta, Georgia 30345
StaymanC@adr.org

McGuireWoods LLP

Halima Horton
Ga. Bar No. 367888
hhorton@mcguirewoods.com

Promenade II, Suite 2100
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 443-5500
Facsimile: (404) 443-5599

*Counsel for Respondent*